THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

COMMODITY FUTURES TRADING )
  COMMISSION, )
      Plaintiff, )
vs. ) NO. CIV-09-154-D
MARK S. TRIMBLE and PHIDIPPIDES )
  CAPITAL MANAGEMENT LLC, )
      Defendants, )
PHIDIPPIDES CAPITAL LP, )
      Relief Defendant. )

**O R D E R**

On October 30, 2009 the Court conducted a hearing on the Plaintiff's Second Motion to Show Cause Why Mark S. Trimble, Nancy Trimble and Kathleen Herrera Should Not be Held in Contempt for Violating the Restraining Order and Preliminary Injunction [Doc. No. 88], and the Receiver's Motion for Mark S. Trimble to Show Cause Why He Should Not be Held in Contempt of the Court's Order Appointing Receiver and Preliminary Injunction [Doc. No. 91].

Prior to the hearing, the Court conferred with counsel for all parties and determined that the October 30, 2009 hearing would be limited to one issue: the allegation that Mark S. Trimble ("Trimble") is in contempt of Court as a result of the fact that, on or about October 26, 2009, he granted a second mortgage on his personal residence and that he obtained approximately $67,000.00 in proceeds from that mortgage and spent some or all of those funds without notification to, or approval of, the Receiver. Pursuant to the parties' agreement and the Court's consent, the remaining issues raised by the two show cause motions will be heard and determined at a later date.

Accordingly, the evidence at the hearing was limited to the issue of the second mortgage, and the following findings and conclusions are confined to that issue.

At the October 30 hearing, Plaintiff, Commodities Future Trading Commission ("CFTC"), appeared by its counsel, Rosemary Hollinger; Trimble appeared in person and by his counsel, Mack Martin. The Receiver, C. David Rhoades, appeared in person and by his counsel, Warren F. Bickford.

Based on the motions, the applicable law, stipulations of the parties, and the evidence at the hearing, the Court finds and orders as follows:

Findings of Fact:

1. On February 10, 2009, this Court entered a Consent Temporary Restraining Order [Doc. No. 7] (the "Restraining Order"); Trimble and Phidippides did not oppose the CFTC's request for a restraining order and, in fact, consented to its specific terms. The Restraining Order prohibited Trimble and Phidippides from, *inter alia,* "dissipating, withdrawing, transferring, removing, concealing or disposing of cash...funds, assets or other property" held in the name of Trimble or Phidippides, or otherwise. Restraining Order ¶ 1. It also prohibited each firm, corporation, entity or person having notice of the Restraining Order and holding any funds, property or assets of Trimble or Phidippides from transferring, withdrawing, removing, or disposing of the same until further order of the Court. *Id.* at ¶ 2.

2. On March 6, 2009, the Court entered a Consent Preliminary Injunction [Doc. No. 11] (the "Injunction"); Trimble and Phidippides consented to the entry of the Injunction as well as to its specific terms and provisions. The Injunction incorporated the Restraining Order prohibitions against the transfer of funds, assets or property by Trimble and/or Phidippides or any person or entity holding

their funds or property. Injunction ¶3A and ¶ 4. The Injunction further prohibits Trimble from altering any of his interests in property, and from creating a lien regarding any of his property. Injunction section IV.

3. The Injunction ordered Trimble to prepare, sign and file under seal with the Court, within 30 days, a complete and accurate accounting for the period of January 1, 2005 to the date of the accounting; the Injunction specified the matters to be included in the accounting. Injunction ¶ 6. Among the required matters to be reported were all "funds, securities, commodity interests, assets and other property currently owned or controlled (legally, equitably or otherwise) directly or indirectly" by Trimble or Phidippides, as well as those "received directly or indirectly" by them. *Id.* at ¶ 6B and C. In addition, Trimble was required to report all "funds, securities, commodity interests, assets and other property transferred or otherwise disposed of directly or indirectly" by Trimble or Phidippides; he was to provide specified details of such transactions. Injunction ¶ 6D and E.

4. On May 29, 2009, following notice to the parties, the Court conducted a hearing on the Plaintiff's Motion for Rule to Show Cause Why Mark S. Trimble Should Not Be Held in Contempt for violating the Restraining Order and Injunction by failing to disclose certain financial transactions and related matters which he was required to report to the Receiver.

5. On June 1, 2009, the Court entered its Order [Doc. No. 36] (the "June 1 Contempt Order") finding Trimble in contempt for violating the Restraining Order and the Injunction by failing to disclose to the Receiver certain financial transactions, as detailed in the June 1 Contempt Order [Doc. No. 36]. The Findings of Fact set forth in the June 1 Contempt Order are adopted and incorporated as though fully set forth herein.

6. The June 1 Contempt Order directed Trimble to transfer certain funds, to submit a detailed

accounting, including receipts and records, reflecting specific expenditures and transactions, as more fully detailed in the June 1 Contempt Order at pages 8 and 9. Trimble was ordered to complete an accounting within 30 days of June 1, 2009; in order to purge himself of the contempt, he was ordered to take all actions required by the June 1 Contempt Order within 30 days thereafter. He was advised that his failure to do so would result in further actions, including his potential incarceration.

7. Upon receipt of Trimble's accounting and notice of actions taken to comply with the June 1 Contempt Order, the Court directed the Receiver to examine the same and report to the Court whether Trimble had fully complied. Upon receipt and review of the Receiver's response, the Court entered a September 4, 2009 Order [Doc. No. 84] finding that Trimble had satisfied the requirements of the June 1 Contempt Order.[1] Trimble was expressly cautioned, however, that he would be required to "continue to comply with the Consent Preliminary Injunction as well as all other orders entered in this case." September 4, 2009 Order at page 2.

8. At the October 30, 2009 hearing on the instant motions, Plaintiff presented evidence and Trimble stipulated to the following facts:

a. On or about October 21, 2009, Trimble submitted to the Tinker Federal Credit Union a loan application for a second mortgage on his residence;

b. From October 26, 2009 through October 28, 2009, Trimble received proceeds from the second mortgage consisting of approximately $67,000.00; of this amount, he received a series of checks made payable directly to him, and he directed that other amounts be paid directly to individuals and entities he designated as recipients of specific amounts.

---

[1] Whether Trimble fully complied with this requirement is now challenged by Plaintiff and the Receiver; however, that is an issue which will be resolved in a subsequent proceeding in accordance with the agreement of the parties.

c. Upon learning of this transaction in an October 27, 2009 deposition, Plaintiff and the Receiver notified the Tinker Federal Credit Union of these proceedings and stopped payment of approximately $30,500.00 of the loan proceeds;

d. At the time of the October 30 hearing, approximately $36,500.00 of the proceeds were unaccounted for.

9. Trimble stipulated that the documents reflecting this transaction, introduced and labeled as Plaintiff's Exhibit 1 at the October 30 hearing, were authentic and admissible.

10. Trimble further stipulated that he did not seek authorization from the Court to obtain the loan or expend the proceeds, and that he did not notify the Receiver of this transaction or the distribution of the proceeds.

11. The disposition of the funds comprising the approximately $36,500.00 paid by the Tinker Federal Credit Union to Trimble or third parties at Trimble's direction is unknown.

12. Trimble stipulated that his conduct in seeking and obtaining the $67,000.00 from the Tinker Federal Credit Union constitutes a violation of the Injunction entered herein.

<u>Conclusions of Law:</u>

1. The Court has jurisdiction of this action pursuant to the Commodity Exchange Act, 7 U. S. C. § 13a-1. The Commodity Exchange Act authorizes the Court to exercise its powers to effectuate the purposes of the Act, including but not limited to the issuance of writs and orders. *Id.* at § 13a-1(a).

2. All parties received proper notice of the October 30, 2009 hearing and appeared by counsel; Trimble and the Receiver were also present.

3. A district court has broad discretion in using its contempt power to require adherence to

court orders. *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1209 (10th Cir. 1992) (citations omitted).

4. To prevail on its request for a civil contempt citation, the CFTC bears the burden of proving that Trimble is in contempt of the Court's prior orders; to satisfy its burden, the CFTC must present clear and convincing evidence that: 1) a valid court order existed; 2) the defendant had knowledge of the order; and 3) the defendant disobeyed the order. *F.T.C. v. Kuykendall*, 371 F. 3d 745, 756-57. (10th Cir. 2004).

5. The CFTC has satisfied its burden of proof. Trimble does not dispute that the Restraining Order and the Injunction are valid court orders entered in this case, and he admits that he was aware of the terms and provisions of those orders, including the express restrictions on his ability to transfer funds, receive funds, and dispose of or encumber assets.

6. Trimble expressly stipulated that, on or about October 26, 2009, he made a second mortgage on his residence, that he requested disbursement of approximately $67,000.00 as proceeds from the mortgage, and that he received approximately $36,500.00 of that amount or directed the distribution of a portion of that amount to third parties for payments on his behalf. He further stipulated that he did not seek authorization from the Court to grant the second mortgage and receive the proceeds, that he did not notify the Receiver or the Court regarding the second mortgage, and that he did not account to the Receiver for the proceeds of the same. Trimble expressly stipulated that his conduct in granting the second mortgage and his receipt of funds as proceeds of the same violates the provisions of the Injunction.

7. Approximately $36,500.00 of the $67,000.00 of the Tinker Federal Credit Union loan proceeds was within Trimble's possession and or control, and is presently unaccounted for.

III.  Directions and Sanction:

Having determined that Trimble is in civil contempt and has admitted his contempt, the Court issues the following directions and sanction:

1.  Trimble is directed to immediately turn over to the Receiver all proceeds of the second mortgage obtained from the Tinker Federal Credit Union which remain in his possession or control, and to fully account for all amounts no longer in his possession or control;

2. Trimble is directed to immediately make a full and complete accounting to the Receiver of any personal property sold or transferred without approval of the Receiver, and the proceeds obtained from any such sale or transfer;   Trimble is further directed to immediately turn over to the Receiver any such proceeds in his possession or control;

3. Trimble is directed to immediately provide full and complete disclosure regarding any and all bank accounts, brokerage accounts, trading accounts, credit union accounts, safety deposit boxes, and any similar financial arrangements which he, his wife, or anyone on his behalf has opened, deposited funds, or otherwise utilized from the inception of this case through the date of the disclosure; this disclosure shall include the current balance of any such accounts and the provision of all records, statements, receipts, and any other documents which in any way relate to such accounts;

4.  All accountings and disclosures directed by this Order shall be filed under seal, and served upon Plaintiff and the Receiver; and

5.  Because of the nature of Trimble's violations, and because this is the second contempt proceeding involving Trimble in this case, the Court orders that Trimble be immediately taken into the custody of the United States Marshal and incarcerated until further order of the Court.  In light

of Trimble's past and current behavior, the Court concludes this sanction is necessary, as it is the level of coercion most likely to effect Trimble's compliance with the Orders of the Court. Trimble may purge himself of his contempt, and thereby be released from incarceration, by accomplishing all of the actions previously detailed in this Order.

The Court further orders that the Receiver shall, as soon as practicable, inventory all personal property located in Trimble's home or on his property for the purpose of determining whether any such property has been improperly disposed of, and shall thereafter at least once per month re-inventory such property and report to the Court any unauthorized removal, transfer, or disposition of any such property.

The issues remaining with regard to the show cause motions filed by Plaintiff and by the Receiver will be determined at a hearing at 2:30 p.m. on the 13th day of November, 2009.

IT IS SO ORDERED this  2nd   day of November, 2009.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE